UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TRACY BOATWRIGHT,

    Plaintiff,

v.                                                                       Case No. 8:20-cv-2165-TPB-AAS

AETNA LIFE INSURANCE COMPANY,

    Defendant.
_____/

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

This matter is before the Court on "Defendant's Dispositive Motion for Summary Judgment with Supporting Memorandum of Law" and "Plaintiff's Dispositive Motion for Summary Judgment and Incorporated Memorandum of Law," both filed December 3, 2021.[1] (Docs. 23; 25). Both parties filed responses in opposition (Docs. 39; 42) and replies (Docs. 49; 50). Upon review of the motions, responses, court file, and record, the Court finds as follows:

**Background**[2]

Until 2003, Plaintiff Tracy Boatwright worked as a home care registered nurse for Senior Home Care, Inc. At that time, she was no longer able to work due to interstitial cystitis with Hunner's ulcers, peripheral neuropathy, and fibromyalgia. Plaintiff had long-term disability "LTD" coverage under Group Policy

---

[1] Each party filed a statement of undisputed facts (Docs. 24; 26) and a response in opposition to the other party's statement of undisputed facts (Docs. 40, 43).
[2] The Court construes the facts and evidence in the light most favorable to the non-moving party for the purpose of ruling on the motion for summary judgment.

No. GP-884271 ("the Policy"), issued by Defendant to Senior Home Care as part of an employee welfare benefit plan. Her LTD claim was approved, with benefits beginning on October 12, 2003. She was subsequently approved for continuing LTD benefits pursuant to the "any reasonable occupation test" as her treating physicians continued to evaluate and describe her chronic medical conditions. The policy gives Defendant "discretionary authority" to determine eligibility for benefits and construe the Policy's terms and provisions.

In 2019, the administrator of the plan, Defendant Aetna Life Insurance Company, terminated these benefits. Defendant relied on, among other things, the lack of current medical information from her treating physicians, independent peer medical review from three doctors, and video surveillance obtained by an investigator to conclude that Plaintiff's conditions did not prevent her from working in any reasonable occupation.[3] Although Defendant acknowledged Plaintiff's receipt of federal disability benefits,[4] it explained that its decision was based on "new information" that has been unavailable to the Social Security Administration.

Plaintiff contends that Defendant wrongfully and unreasonably denied her LTD benefits in violation of the Employee Retirement Income Security Act of 1974, *as amended* ("ERISA"), 29 U.S.C. § 1001 *et seq*. The parties have filed cross motions for summary judgment.

---

[3] The video surveillance was conducted by an investigative firm at Defendant's request on March 13-14 and March 29-30, 2019. No activity was observed on March 14th or March 30th, but Plaintiff was observed and recorded on March 13th and March 29th.
[4] On May 17, 2005, Plaintiff was awarded federal disability benefits by the Social Security Administration ("SSA"), which deemed her to be disabled within the meaning of applicable federal regulations beginning on July 15, 2003.

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A properly supported motion for summary judgment is not defeated by the existence of a factual dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Only the existence of a genuine issue of material fact will preclude summary judgment. *Id.*

The moving party bears the initial burden of showing that there are no genuine issues of material fact. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing the existence of genuine issues of material fact. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995). If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true and all reasonable inferences must be drawn in the nonmoving party's favor. *Shotz v. City of Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003).

Where, the moving party will bear the burden of proof on an issue at trial, demonstrating the absence of a genuine issue of material fact requires the submission of credible evidence that, if not controverted at trial, would entitle the moving party to a directed verdict on that issue. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). Only if the moving party meets that burden is the non-moving party required to produce evidence in opposition. *Chanel, Inc. v. Italian Activewear of Fla. Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991). Summary judgment

should be denied unless, on the record evidence presented, a reasonable jury could not return a verdict for the non-moving party. *Id.*; *see also Fitzpatrick*, 2 F.3d at 1115-16.

The standard for cross-motions for summary judgment is not different from the standard applied when only one party moves for summary judgment. *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). The Court must consider each motion separately, resolving all reasonable inferences against the party whose motion is under consideration. *Id.* "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (quoting *Bricklayers Int'l Union, Local 15 v. Stuart Plastering Co.*, 512 F.2d 1017 (5th Cir. 1975)).

## Analysis

Defendant seeks summary judgment, arguing that its decision to deny Plaintiff's LTD claim was reasonable because it was based on careful consideration of the administrative record and supported by substantial evidence. Plaintiff also seeks summary judgment, contending that the decision to terminate benefits was wrong and unreasonable because Defendant selectively reviewed the medical evidence and failed to consider her chronic ailments. Plaintiff additionally points to a Social Security determination of disability to support her LTD claim and a conflict of interest because Defendant makes eligibility decisions and pays benefits out of its own funds.

Summary judgment in the ERISA context operates differently than summary judgment in the normal course of litigation. "ERISA benefits denial cases place the district court as more of 'an appellate tribunal than as a trial court.'" *Graham v. Life Ins. Co. of North America*, 222 F. Supp. 3d 1129, 1136 (N.D. Ga. 2016) (quoting *Curran v. Kemper Nat. Servs., Inc.*, No. 04-14097, 2005 WL 894840, at *7 (11th Cir. 2005)). "Review of the plan administrator's denial of benefits is limited to consideration of the material available to the administrator at the time it made its decision." *Blankenship v. Metropolitan Life Ins. Co.*, 644 F.3d 1350, 1354 (11th Cir. 2011); *see Alexandra H. v. Oxford Health Ins. Inc. Freedom Access Plan*, 833 F.3d 1299, 1312 (11th Cir. 2016); *O'Leary v. Aetna Life Ins. Co.*, 2017 WL 6617052, at *1 (N.D. Fla. Oct. 19, 2017). When reviewing the plan administrator's decision, the district court performs the following analysis:

> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
>
> (2) If the administrator's decision is in fact "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
>
> (3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).
>
> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.
>
> (5) If there is no conflict, then end the inquiry and affirm the decision.

> (6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Blankenship*, 644 F.3d at 1355 (citation omitted).

In the initial *de novo* review, the plaintiff bears the burden to prove that he or she is disabled. *Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1247 (11th Cir. 2008). If the plaintiff is unable to carry that burden, the administrator's determination was not "wrong," and the court's inquiry ends there. *See id*. at 1246-47. If the court reaches the next stage, the plaintiff bears the burden of establishing that the plan administrator's decision was "arbitrary and capricious." *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1195-96 (11th Cir. 2010). Under this standard, the administrator's decision should be affirmed if it is reasonable given the available evidence, even if the court may have made a different decision itself had it been the original decision-maker. *See Griffis v. Delta-Family Care Disability*, 723 F.2d 822, 825 (11th Cir. 1984).

A conflict of interest exists where – as here – the plan administrator makes eligibility decisions and pays benefits out of its own funds. *Blankenship*, 644 F.3d at 1355. That being said, a reviewing court still owes deference to the administrator's discretionary decision. *Id*. The conflict is simply a factor for the court to consider when evaluating whether the benefits decision was arbitrary and capricious.[5] *Id*. "If the evidence is close, then the administrator did not abuse its discretion, and the requisite deference compels the affirmance of the administrator's

---

[5] The Eleventh Circuit has noted that the existence of a conflict of interest is "an unremarkable fact in today's marketplace." *Blankenship*, 644 F.3d at 1356.

decision." *Murray v. Hartford Life and Acc. Ins. Co.*, 623 F. Supp. 2d 1341, 1352 (M.D. Fla. 2009), *aff'd*, 363 F. App'x 710 (11th Cir. 2010) (internal quotation and citation omitted).

Based on its review of the administrative record, the Court is inclined to find that the claim decision is not wrong. But even assuming *arguendo* that the decision to terminate benefits is wrong, reasonable grounds supported the decision because the evidence before the plan administrator was, at best, close. Plaintiff relies heavily on her medical conditions to challenge the administrator's decision, including that there are no known cures for interstitial cystitis and fibromyalgia, and that she has no record of showing improvement over time. However, diagnoses of conditions are insufficient to establish that a plaintiff meets the definition of disability within the meaning of a group policy. *See, e.g.*, *Thomas v. Hartford Life and Accident Insurance Company*, No. 1:09-cv-0877-CC, 2010 WL 11505871, at *11 (N.D. Ga. Mar. 29, 2010) (diagnosis of interstitial cystitis itself is insufficient to establish that plaintiff meets the definition of disability within the meaning of group policy); *Howard v. Hartford Life and Acc. Ins. Co.*, 563 F. App'x 658, 663 (11th Cir. 2014) (concluding that plaintiff diagnosed with fibromyalgia was nevertheless capable of working full time). Rather, the question before the plan administrator was whether these medical conditions precluded Plaintiff from working in any reasonable occupation.

The administrative record shows that three independent medical experts reviewed Plaintiff's medical records and other evidence, and they each concluded that even with her diagnoses, Plaintiff would not be precluded from working in any

reasonable occupation.[6] "Under well-settled ERISA law, the administrator is 'entitled to rely on the opinion of a qualified [medical] consultant who neither treats nor examines the claimant, but instead reviews the claimants' medical records.'" *Ness v. Aetna Life Ins. Co.*, 257 F. Supp. 3d 1280, 1291 (M.D. Fla. 2017) (quoting *Richey v. Hartford Life and Acc. Ins. Co.*, 608 F. Supp. 2d 1306, 1312 (M.D. Fla. 2009)). Based on the first two independent peer reviews, Defendant prepared an employability analysis dated October 9, 2019, which used Occupational Access System ("OASYS") job-matching software program and identified five federally recognized occupations meeting all applicable requirements: (1) expediter clerk; (2) service order expediter; (3) jacket preparer; (4) ticket scheduler; and (5) line-up worker.[7]

Although Plaintiff's treating physicians had previously opined that she was disabled under the meaning of the Policy, there was no opinion from a treating

---

[6] Dr. Eric Chavez provided a report noting the absence of any information about psychiatric symptoms or treatment and concluding that functional impairment from a psychiatric condition was not substantiated. Dr. Karen Oldham provided a report concluding that a normal office exam and normal function observed on the surveillance video indicated Plaintiff could perform functional tasks eight hours a day and forty hours a week. An independent peer review on appeal was conducted by Dr. Neil Gupta, who provided a report citing lack of medical information to support that Plaintiff was impaired.

[7] Plaintiff disagrees with the results of the occupational analysis, arguing that she is not reasonably fitted by education, training, or experience for any of the listed occupations. An administrator is generally "not required to collect vocational evidence in order to prove there are available occupations for the claimant." *Richey*, 608 F. Supp. 2d at 1312. That being said, the "use of vocational evidence in conjunction with medical evidence is an effective method of reaching an informed decision as to a claimant's work capability." *Id.* Claim administrators have long used the OASYS program to help determine whether a claimant is disabled under the reasonable occupation test based on whether the national economy contains one or more suitable occupations that the claimant could perform. *See, e.g., Altemus v. Hartford Life and Acc. Ins. Co.*, No. 8:07-cv-483, 2008 WL 906728, at *5 (M.D. Fla. Apr. 3, 2008).

physician doctor at the time of the termination of benefits. *See Sobh v. Hartford Life and Acc. Ins. Co.*, 658 F. App'x 459, 465 (11th Cir. 2016) (upholding claim administrator's decision in part because plaintiff's treating physician did not respond to requests for updated assessment of plaintiff's condition and functionality before benefits were terminated); *Everette v. Liberty Life Assur. Co. of Boston*, No. TDC-16-1248, 2017 WL 2829673 (D. Md. June 29, 2017) (affirming claim administrator's decision in part because plaintiff did not provide updated medical information from treating physicians). Prior to terminating Plaintiff's benefits, Defendant made several attempts to contact Dr. Ruiz for an updated assessment, including in August 2019 and September 2019. No information was received. Moreover, Plaintiff did not provide updated disability opinions or evaluations from any treating physician when she appealed the administrator's termination decision.[8]

However, even if there had been any opinions from Plaintiff's treating physicians that she was disabled within the meaning of the Plan at the time of termination, the claim administrator would still have been entitled to weigh the medical opinions and was not required to defer to the treating physicians.[9] *See*

---

[8] To support her appeal, Plaintiff submitted treatment records from Dr. Pitroda (last seen in May 2018), Dr. Ruiz (most recent record dated September 26, 2019), Dr. Chadwick (last treated for ear infection in February 2018), and Dr. Sreenivas (most recent record dated August 13, 2019). Plaintiff's benefits were terminated as of October 18, 2019.
[9] The administrative record reflects that Plaintiff went in for an examination with Dr. Ruiz on September 26, 2019, and notes show that she received treatment for chronic neck pain, chronic back pain, chronic abdominal pain, and stable fibromyalgia, along with other diagnoses, but that the exam note was difficult to read. However, as the Court mentioned, Dr. Ruiz did not provide an actual report or respond to any requests for updated information.

*Blankenship*, 644 F.3d at 1356 (explaining that plan administrator may give different weight to opinions of medical experts without acting arbitrarily and capriciously, and administrator does not need to accord extra respect to treating physicians); *Everette*, 2017 WL 2829673 at *7 (explaining that because plaintiff's treating physicians did not return calls or provide written opinions, it was appropriate for claim administrator to rely on independent doctor's review of medical records to assess her disability status); *Giertz-Richardson v. Hartford Life and Acc. Ins. Co.*, 536 F. Supp. 2d 1280, 1291 (M.D. Fla. 2008) (concluding that administrator was not wrong to credit opinions of independent reviewing doctors over plaintiff's own doctors). The Court finds that there was a reasonable basis for the administrator to find that Plaintiff was not disabled based on the reports of the well-qualified experts, particularly in light of the lack of current information from Plaintiff's own physicians.

To the extent that the claim administrator relied on the surveillance evidence, the Court cannot conclude that the termination decision was "arbitrary and capricious" where the video shows Plaintiff carrying on some normal activities outside her home over time. On these occasions, Plaintiff was observed walking with a normal gait, picking things up (with slightly restricted movement), driving, pushing a shopping cart, closing her car trunk, carrying objects, and traversing stairs. Even viewing in light most favorable to Plaintiff, the surveillance evidence appears to be a "close call."

In addition to her diagnoses and disagreement with inferences drawn from surveillance video, Plaintiff mainly argues that the termination decision is

reversible due to (1) the fact that the SSA deemed her eligible for disability benefits and (2) the conflict of interest. As to the SSA's disability determination, although the SSA may employ stricter criteria for disability, the SSA's disability determination is not dispositive, particularly where the plan administrator relied on new evidence that had not been provided to the SSA, such as video surveillance. *See Ness*, 257 F. Supp. 3d at 1291 (citing *Oliver v. Aetna Life Ins. Co.*, 613 F. App'x 892, 897 (11th Cir. 2015)); *Sobh v. Hartford Life and Acc. Ins. Co*, No. 8:15-cv-716-T-30EAJ, 2015 WL 7444336, at *8-9, *aff'd*, 658 F. App'x 459 (11th Cir. 2016)). Similarly, the conflict of interest is not dispositive – rather, it is one factor to consider. When evaluated in conjunction with the administrative record, this fact does not sway the Court. *See, e.g.*, *Ness*, 257 F. Supp. 3d at 1288 (explaining that although conflict of interest may be a factor to consider, the court's basic analysis still focuses on whether the administrator's decision was reasonable).

## Conclusion

The challenged benefits decision was probably not wrong, and it was certainly not "arbitrary and capricious." *See, e.g.*, *Howard*, 563 F. App'x at 663. Although Plaintiff believes that the administrator "cherry-picked" evidence, the administrator is entitled to weigh evidence, particularly where the evidence may conflict.[10] Even considering Defendant's conflict of interest, the Court finds that Defendant's decision to terminate benefits past October 18, 2019, was reasonable.

---

[10] For example, Plaintiff points to the fact that Dr. Ruiz continued to treat Plaintiff for fibromyalgia and her inability to walk, but the surveillance evidence shows Plaintiff walking with no perceptible difficultly on at least two different days.

As such, Plaintiff's motion for summary judgment is denied, and Defendant's motion for summary judgment is granted.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) "Plaintiff's Dispositive Motion for Summary Judgment and Incorporated Memorandum of Law" (Doc. 25) is hereby **DENIED**.

(2) "Defendant's Dispositive Motion for Summary Judgment with Supporting Memorandum of Law" (Doc. 23) is hereby **GRANTED.**

(3) The Clerk is directed to enter judgment in favor of Defendant Aetna Life Insurance Company, and against Plaintiff Tracy Boatwright.

(4) Following the entry of judgment, the Clerk is directed to terminate any pending motions and deadlines, and thereafter close this case.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 5th day of April, 2022.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**